UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
SHELBY DIVISION

IN RE:

B AND B GROUP DEVELOPMENT, LLC

DEBTOR.

Case No. 14-40430

Chapter 11

**EMERGENCY MOTION FOR RETENTION OF
CAROLAND DEVELOPMENT, LLC AS CUSTODIAN OF THE
PROPERTY OF THE ESTATE OR, IN THE ALTERNATIVE TO PROHIBIT
USE OF CASH COLLATERAL AND MEMORANDUM IN SUPPORT**

Bank of the Ozarks ("Ozarks"), secured creditor herein, moves this Court pursuant to Section 543(d)(1) and Rule 9014 to allow the Receiver to remain in place as Custodian and excuse the Receiver from compliance with Sections 543(a) and (b). In the alternative, if the Court does not allow the Receiver to remain in place as Custodian, Ozarks moves this Court to prohibit the Debtor from using cash collateral pursuant to Section 363(c)(2). In support of its Motion, Ozarks shows the Court as follows:

*Introduction*

The Debtor is a single asset real estate entity, whose sole asset is a 144 unit apartment complex in Florence, South Carolina, which was in receivership prior to the filing of this case. The receivership was part of a judicial foreclosure brought by Ozarks in Florence County, South Carolina. A foreclosure sale was set for September 2, 2014 and this case was filed to stop the foreclosure. Prior to the foreclosure, the Debtor was diverting rents and failed to pay insurance premiums, taxes and water bills and allowed the property to degenerate to the point that there are now 105 broken windows in need of repair. As detailed below, Ozarks has advanced over $318,000 to cover these expenses and the monthly rents are insufficient to cover the operating expenses. The Debtor has proven that it is not capable of prudently managing the property,

protecting the tenants or protecting Ozarks' collateral. As this Motion will show, the Receiver should be excused from compliance with Sections 543(a) and (b) and should be allowed to remain in place as Custodian pursuant to Section 543(d).

*Jurisdiction*

1. The Debtor filed its voluntary petition for relief under Title 11 of the United States Bankruptcy Code on August 29, 2014. Prior to the filing of the Petition, a Receiver had been appointed by the Court of Common Pleas in Florence County, South Carolina. The Receiver remains in possession of the property.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157 and the Court has jurisdiction pursuant to 28 U.S.C. § 151, 157 and 1334.

*Factual Background*

3. On or about May 30, 2008, Debtor executed and delivered to First National Bank of Shelby, North Carolina, a/k/a First National Bank ("FNB") a promissory note in the original principal amount of $2,500,000.00 (collectively, with all extensions, renewals and modifications the "Note"). A copy of the Note is attached hereto as Exhibit A.

4. The purpose of the extension of credit was to finance the purchase of a 144 unit apartment complex (the "Apartment Complex") located in Florence, South Carolina.

5. As a condition of the loan evidenced by the Note and as an inducement to FNB to make the loan, Debtor executed and delivered a Real Estate Mortgage dated May 30, 2008 (the "Mortgage") and recorded on June 9, 2008 in the office of the Florence County Clerk of Court in Book 190, at page 0001. The Mortgage encumbers the Apartment Complex located in Florence County, South Carolina, which has a street address of 318 Royal Street and is more specifically described in the Mortgage, which is attached hereto as Exhibit B.

2

6. The Mortgage contains an Assignment of Leases and Rents as follows:

**Assignment of Leases and Rents.** Mortgagor assigns, grants, bargains, conveys and mortgages to lender as additional security all the right, title and interest in the following (Property).

A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).

B. Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property.

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

*Para. 14 of the Mortgage.*

7. On or about August 1, 2013, FNB merged into Ozarks.

8. Debtor defaulted under the terms and conditions of the Note and Mortgage and on June 5, 2013 and October 24, 2013. Ozarks, or its predecessor-in-interest, notified the Debtor of the default under the Note, its acceleration of the indebtedness and demanded payment in full (collectively, the "Demand Letters"). True and correct copies of the Demand Letters are attached hereto as Exhibits C and D, respectively. The last regular payment made by the Debtor was June 2013.

9. Both before and after the payment default, the Debtor diverted rents from the Property (as defined in the Mortgage) and neglected and refused to pay water bills, property taxes, insurance and payments on the Note to Ozarks.

10. As a result of the defaults, on or about December 23, 2014, Ozarks commenced a foreclosure action and sought the appointment of a receiver ("Foreclosure"). A true and correct copy of the Complaint, the Amended Complaint and the Amended Motion for Appointment of Receiver are attached hereto as Exhibit E.

11. Among the defaults listed as a basis for the appointment of a receiver were the following:

    a. Debtor failed to maintain insurance on the Property, forcing Ozarks to procure insurance for the Property at a cost of $28,432.88;
    b. Debtor failed to pay 2012 and 2013 real estate taxes and the Property was sold at a tax foreclosure sale on October 7, 2013. Ozarks paid $153,974.03 to redeem the Property in December 2013;
    c. Debtor failed to pay the City of Florence for water service and Ozarks paid $89,431.36 in water bills for the Property.

12. In addition, the Debtor failed and refused to turn over rents in excess of normal and customary operating expenses and failed and refused to turn over documents detailing the operations of the Property, including but not limited to monthly profit and loss statements, etc.

13. On April 7, 2014, the Court of Common Pleas in the County of Florence, South Carolina signed an Order appointing Caroland Development, LLC ("Caroland" or "Receiver") Receiver for the Property ("Receiver Order"). Shortly after the entry of the Receiver Order Caroland took possession and control of the Property and continues to operate and maintain the Property.

14. The Order enjoined the Debtor and its principals from interfering with the Receiver.

15. After the Order was entered the Debtor received certain rental payments for the month of May in the approximate amount of $9,456.00 from the Housing Authority and the Debtor refused to turnover those funds to the Receiver despite repeated requests.

16. According to monthly reports filed by the Receiver in the Foreclosure, the Property does not generate sufficient income each month to fund the ongoing operating expenses and Ozarks has been forced to fund shortfalls.

17. On August 4, 2014, the Court of Common Pleas in Florence County entered an Order granting judgment against the Debtor and ordering that the Property be sold to satisfy the judgment. The judgment entered by the Court is in the amount of $2,990,332.76, with interest continuing to accrue at the per diem of $344.11530. See Order for Judgment and Decree of Foreclosure attached hereto as Exhibit F.

18. A sale was scheduled to occur on Tuesday, September 2, 2014, but the Debtor filed bankruptcy to stay the sale.

19. On or about September 3, 2014, one of the principals of the Debtor went to the Property, fired the people managing the property, demanded the turnover of the bank accounts and began interfering with the operation of the property.

***The Receiver Should be Allowed to Remain As Custodian
and Should be Excused From Complying With
Sections 543(a) and (b)***

20. Section 543(d) allows a pre-petition Receiver to remain as custodian if it is in the best interest of the creditors. That section provides:

> (d) After notice and hearing, the bankruptcy court---
>
> (1) may excuse compliance with subsection (a), (b) or (c) of this section if the interests of creditors and if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property.

21. As evidenced by the facts stated above, the Debtor is unable to pay its debts as they become due and has failed to pay taxes, water bills and insurance. In addition, the value of

5

the Property is less than the judgment entered against the Debtor. Therefore this Court need not consider any equity holders in its analysis, but may focus on the interests of creditors.

22. In *In re Falconridge, LLC 2007,* WL 333276, (Bankr. N.D. Ill. 2007) the Bankruptcy Court stated:

> Regardless of what factors are used to aid the court in its decision, ***the paramount and sole concern is the interests of all creditors***, Cites omitted. The interests of the debtor are not to be considered in the court's decision.

*Id.* at 6 (emphasis added).

23. While generally courts and equity favor a debtor in possession having access to all of its assets while attempting to reorganize, "evidence of mismanagement or questionable business practices by the Debtor may negate the statutory obligation of a custodian to turnover assets to a debtor in bankruptcy." *Id.* at 5.

24. When analyzing whether it would be in the best interest of creditors for a custodian to continue in possession, custody, or control, courts examine a number of factors, including:

> (1) The likelihood of a reorganization
>
> (2) The probability that funds required for reorganization will be available;
>
> (3) Whether there are instances of mismanagement by the debtor;
>
> (4) Whether turnover would be injurious to creditors;
>
> (5) Whether the debtor will use the turned over property for the benefit of its creditors;
>
> (6) Whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and
>
> (7) The fact that the bankruptcy automatic stay has deactivated the state court receivership action.

*Id.* at 6.

25. An analysis of these factors in this case compels this Court to determine that the Receiver should remain in place. Given that the Property does not generate enough revenue to pay ongoing operating expenses a reorganization is unlikely and the Debtor will not be able to fund all of the expenses of the operation of the Property. The Debtor has failed to pay insurance, taxes, and water bills and has flagrantly disobeyed the Florence County Court's Order regarding turning over the rents to the Receiver. Ozarks has paid over $300,000 in expenses for this Debtor and will be severely injured if the Receiver is not allowed to stay in place and management of the property is turned over to the Debtor.

### *In the Alternative, if the Receiver Does Not Remain in Place, Ozarks Seeks an Order Denying Use of Cash Collateral*

26. Ozarks has a first priority security interest in the rents generated from the Property.

27. Ozarks has not consented to the Debtor's use of cash collateral.

28. Debtor has not demonstrated and will not be able to demonstrate how it will provide Ozarks adequate protection for the use of the cash collateral.

29. Therefore, Ozarks seeks an Order prohibiting the use of cash collateral if the Receiver does not remain in place and the Debtor takes over the operational control of the Property.

WHEREFORE, Ozarks, secured creditor, respectfully requests that the Court enter an order to allow the Receiver to remain in place as Custodian and excuse the Receiver from compliance with Sections 543(a) and (b); or in the alternative, if the Court does not allow the Receiver to remain in place as Custodian, Ozarks moves this Court to prohibit the Debtor from

using cash collateral pursuant to Section 363(c)(2); and for such other and further relief as the Court deems just and proper.

Dated: September 5, 2014

/s/ Constance L. Young
Constance L. Young (N.C. State Bar No. 16115)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One Wells Fargo Center, Suite 3500
301 S. College Street
Charlotte, NC 28202
Telephone: 704-331-4972
Facsimile: 704-338-9962
Email: cyoung@wcsr.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that copies of the Emergency Motion for Retention of Caroland Development, LLC as Custodian of the Property of the Estate or, in the Alternative to Prohibit Use of Cash Collateral and Memorandum in Support was served via the Court's CM/ECF system.

This the 5th day of September, 2014.

/s/  Constance L. Young
Constance L. Young